Ben H. ADELSON and Nancy R. Adelson, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 62–740.

United States District Court
S. D. California,
Central Division.

May 20, 1963.

**32**

Mosk & Rudman, Edward Mosk, John D. Schuyler, Hollywood, Cal., for plaintiffs.

Francis C. Whelan, U. S. Atty. for Southern Dist. of Cal., Walter S. Weiss, Herbert D. Sturman, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

STEPHENS, District Judge.

At all times material to this action, plaintiff Ben H. Adelson was a duly certified and licensed teacher at the secondary education level in the Los Angeles City School System. He taught English language and literature courses, various reading courses and journalism. During the spring term of 1958, plaintiff was on sabbatical leave from his employer pursuant to the rules and regulations of the California State Board of Education and the local school district (as will be more particularly described below) and during this time and the ensuing summer he traveled in Europe.

Plaintiffs Ben H. Adelson and his wife, Nancy R. Adelson, timely filed a joint income tax return for the calendar year of 1958 reporting therein a deduction for the expenses incurred by plaintiff Ben H. Adelson while traveling on sabbatical leave. Since the claimed deduction involves only this travel expense, reference herein to plaintiff, the taxpayer or Adelson is reference to Ben H. Adelson.

Plaintiff's employer withheld from his salary $1,228.22 during the calendar year of 1958 and paid this sum to the Commissioner of Internal Revenue on account of plaintiff's income tax. Plaintiffs requested a refund of $558.86; $538.59 of this amount is attributable to the additional tax liability resulting from disallowance of plaintiffs' deduction for travel expenses. Plaintiffs filed a timely claim for refund which was disallowed on June 3, 1960.

It is the government's position that expenses incurred in European travel during a sabbatical leave do not qualify as a deduction pursuant to Title 26 U.S.C. § 162(a) (2), which reads:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including— * * *

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *."

The term "necessary" as used in the statute does not mean indispensable. It has been stated that an expense does not have to be absolutely essential to qualify as a necessary expense and it may under some circumstances be proper if appropriate to the development and pursuit of the taxpayer's trade or business. Commissioner of Internal Revenue v. Pacific Mills, 207 F.2d 177 (1st Cir., 1953); Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). Also, an "ordinary expense" may be one that happens but once in a taxpayer's lifetime, but the transaction giving rise to it must be of common or frequent occurrence in the type of business in which the expense was incurred. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (Del.1940).

Plaintiffs' position is that they are entitled to deduct the travel expenses as ordinary and necessary business expenses. They invite attention to the fact that such leave is authorized by California law and local school board regulations.

Section 13457 of the California Education Code provides:

"*Leaves of absence for study and travel.* The governing board of any school district may grant any employee of the district employed in a position requiring certification qualifications, a leave of absence for not to exceed one year for the purpose of permitting study or travel by the

employee which will benefit the schools and pupils of the district."

This provision has been a part of the Education Code of California since 1931.

Section 13458 of the same code specifies the qualifications for eligibility to take such leave. Section 13459 provides as follows:

"*Service and compensation during leaves of absence for travel and study.* Every employee granted a leave of absence pursuant to Section 13457 may be required to perform such services during the leave as the governing board of the district, with the approval of the county superintendent of schools, and the employee may agree upon in writing, and the employee shall receive such compensation during the period of the leave as the governing board, with the approval of said county superintendent, and the employee may agree upon in writing, which compensation shall be not less than the difference between the salary of the employee on leave and the salary of a substitute employee in the position which the employee held prior to the granting of the leave. However, in lieu of such difference, the board may pay one-half of the salary of the employee on leave or any additional amount up to and including the full salary of the employee on leave."

Section 13460 provides for manner of payment of compensation during such leave and that the traveler must return to his school district and complete two more years of service before his right to compensation during leave is finally established.

The Los Angeles City School District implemented these statutory provisions by the publication of Personnel Division Memorandums in the nature of regulations which refer to the authorized leave as "sabbatical" and provide in Memorandum A 12 in pertinent part as follows:

"1. *Definition.* A sabbatical travel leave is one during which an employee engages in planned educational travel for at least 60% of the leave period. Travel is considered educational if it results in a significant contribution to professional growth by exposing the participant to new peoples, cultures, environments, experiences, and events.

"2. *Requirements*

\* \* \* \* \* \*

"b. Sabbatical travel must be undertaken and completed during the leave period.

\* \* \* \* \* \*

"7. *Final Report.* Form 1138 (Statement of Travel Completed) and the sabbatical report must be filed with the In-Service Training Department in person or by registered mail when the leave is completed. The sabbatical report should be typewritten, be 1500 or more words in length, include a brief description of places visited, and place primary emphasis on the significance of the experiences to the employee as an educator and to the application of the educational growth to his regular assignment.

"8. *Completion of Leave.* The sabbatical report and all other required forms must be filed within two pay periods following the employee's return to active service. Salary will be withheld for service rendered after the deadline until the documents are filed and approved.

"9. *Incomplete Sabbatical Leave —Travel or Combination.* Provision is made for partial compensation for incompleted sabbatical leave caused by serious illness or other reason beyond the employee's control, providing that a significant portion of the original travel has been accomplished. Compensation may be allowed on a prorated basis according to portion completed. Compensation shall be determined according

to the prescribed table and providing all of the other requirements have been met. (See Personnel Division Memo A 15, LEAVE—Sabbatical, Incomplete.)"

Personnel Division Memorandum A 12 which is entitled, "General Policy on Sabbatical Leave," also contains significant provisions, as follows:

"4. *Incomplete Leave.* A sabbatical leave which has been granted may be canceled or converted to another type of leave. If such cancellation or conversion is passed by the Board of Education after the beginning date of the sabbatical, the employee loses sabbatical privileges until another seven years have been served and must refund any sabbatical salary received. Under certain circumstances an employee who is unable to complete sabbatical leave requirements may receive compensation on a prorated basis.

\* \* \* \* \* \*

"10. *Retirement.* A period of sabbatical leave does not affect retirement status if retirement contributions are made for the period of the leave. \* \* \*"

(This section contains further details and reference to Education Code § 14060, which is the basis for crediting compensated leave time toward retirement.)

"11. *Salary Points.* Travel or formal study undertaken while on sabbatical leave may be submitted for salary points under established point regulations."

The regulations also provide that the planned travel time must be 60% of the sabbatical leave period, exclusive of summer vacation.

■ Plaintiff applied for such a leave for the second semester of the 1958 school year and filed a sabbatical travel plan consisting of an itinerary which was once amended. It not only included 60% of the leave period, but also substantially all of the summer vacation period. This plan was approved. He was compensated during leave at the rate of 50% of his regular salary.

To support their claim to refund, the plaintiffs heavily rely upon the Commissioner's Regulations, § 1.161–1, § 1.162–2, and especially on § 1.162–5, which provides in part:

"*Expenses for education*

"(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

"(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. \* \* \*"

Alternative theories stem largely from these regulations:

1. The travel was undertaken primarily for maintaining and improving skills which were required by the taxpayer in order that he might teach school. [§ 1.162–5(a) (1)].

This is not to say that the improvement was required by his employer, but only that the skills were required by his employer and his trip improved them. An example of other such improvement of skills is a refresher course. Coughlin v. Commissioner, 203 F.2d 307 (2nd Cir., 1953).

2. Having qualified for and having elected to take travel leave, it was reasonable and necessary to incur all the costs of travel which had to be completed in order to retain his salary during the leave period. (§ 1.162–1 as a general business expense; § 1.162–2 as a reasonable and necessary travel expense; § 1.162–5(a) (2) as meeting the express requirements of the taxpayer's employer as a condition to the retention of the taxpayer's salary.)

3. The travel leave was in essence alternative to teaching school at this point in the taxpayer's career for the law authorizing the leave provided that he might be required to perform services during the leave, for a salary, and for retirement benefits. In effect, by completing the required travel he had earned his compensation by doing something that the law sponsored for the benefit of the schools and pupils of the district.

No contention is made that the taxpayer's costs of travel have been required In the performance of his teaching duties except on travel leave. He relies upon the provisions of long standing California law and the school board's regulations adopted to implement the law to establish that such travel is ordinary. No evidence was introduced as to how many other teachers have done the same thing to establish that it is customary. The Court in Hill v. Commissioner, 181 F.2d 906, 910, (4th Cir., 1950), rejects the idea that taxpayers are required to prove by statistics how many other taxpayers in similar positions have done the same thing. The taxpayer's position is not so unreasonable in this respect that it cannot be accepted for purposes of this decision which is resolved upon other considerations.

The Commissioner's regulations acknowledge that as to § 1.162–5(a) (1), deductibility shall depend upon all of the facts of each case. In (c) of the same regulation, the Commissioner says that in general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible. These provisions do not foreclose a deduction in a proper case. The validity of the first contention mentioned above will depend upon the facts of the case as stated and subsequently mentioned in this memorandum.

Under Regulations § 1.162–5(a) (2), the Commissioner takes the position that only to the extent that the expenditures for education are to meet the minimum education required by the taxpayer's employer or by applicable law or regulations as a condition to retention of salary, status or employment are they deductible. As to this, the plaintiffs take the position outlined in the second contention noted above. The suggestion is that the leave was granted for planned education travel all of which had to be completed by the taxpayer to retain his salary; so the completion of this planned educational travel is the minimum education required.

Other Courts have considered the deductibility of expenses in analogous situations. Travel expenses have not been allowed as a deduction where such travel was voluntarily undertaken as one of several permissible ways to gain credits to validate a teaching certificate [Seibold v. Commissioner, 31 T.C. 1017 (1959)] or where voluntarily undertaken to enhance the possibility of becoming a full professor [Cardozo v. Commissioner, 17 T.C. 3 (1951)] or where voluntary tourist travel was undertaken during sabbatical leave, no report being required and no showing having been made that this was the customary way for faculty members to spend their sabbatical leaves [Dennehy v. Commissioner, 309 F.2d 149 (6th Cir., 1962)].

In the case of Hill v. Commissioner, 181 F.2d 906 (4th Cir., 1950) it was held that it was necessary for the taxpayer school teacher to incur travel expenses to take required university courses in order to retain her position and that in this circumstance the cost of travel was deductible. In Brooks v. Commissioner, 274 F.2d 96 (9th Cir., 1959) the cost of travel was held to be deductible because it was necessary in order to maintain the taxpayer's position in her occupation as an independent research scientist.

In a ruling of the Bureau of Internal Revenue, I.T. 3380, 1940–T.C.B. 29, the costs of travel on sabbatical leave were found to be allowable deductions when travel during the leave period followed by a report was required in order to retain the taxpayer teacher's position. It is conceded by plaintiffs that it was not

necessary for Adelson to travel to retain his position as a teacher.

In the Brooks case the Court noted that Dr. Brooks had turned down profitable employment as head of the Physiology Department at Hunter College at $9,000.00 per year, preferring to continue her occupation as an independent research scientist, an occupation which had produced no profit, but had the prospects of profit in the future. The Court did not question her right to pursue her own occupational choice. The Court held that the expenses incident to her research were necessary in order to retain her position with and the stipend from the University and noted that the moment her research stopped, her compensation stopped.

Dr. Brooks made a choice between two different occupations, teaching and research. In its most favorable light, Adelson's choice was between two different courses within the same occupation. Both choices offered compensation and retirement benefits. Retirement benefits are tied to payment of salary, and are conditioned upon payment of retirement contributions by the teacher rather than performance of duty. So the fact that retirement benefits are available is not indicative that travel was a separate occupational choice available to Adelson.

The availability of salary points, the accumulation of which may result in an increase in salary, is an element which tends to label the trip as personal. It has been held in other cases, such as, Cardozo v. Commissioner, supra, that where the purpose of the taxpayer is to expand or to increase rather than to maintain a current position, a deduction for the expense incurred by the taxpayer is not allowable. However, it appears to the Court that in this case the earning of salary points was not a motivating consideration, but rather is an incidental matter of no significance.

Having once made his choice to take travel leave, it can at least be said that when his travel stopped, Adelson's compensation stopped as in the Brooks case. In this sense it was literally necessary for him to incur the travel expense to be compensated during the leave period. Whether the travel leave was really an alternative way to follow his trade or business depends upon other factors of the case which are discussed below.

After Adelson returned, he was promoted temporarily to the position of a department head, but there is no evidence suggesting that this temporary promotion had any connection with the completion of his planned educational travel. The fact of the promotion when taken into consideration with the surrounding circumstances is not sufficient to support an inference that such a possibility entered into Adelson's considerations in deciding to request travel leave. The purpose of the trip cannot be labeled personal on this account.

The taxpayer submits that his case meets the objections which have compelled the rejection of deductions for travel in other cases. It was authorized by law. It is referred to as planned educational travel. The school board required a travel plan which had to be approved and faithfully followed or payment of salary would not be made. A report subject to approval of a committee was required in which the relationship to the taxpayer's immediate teaching assignment was to be stressed. Such a report was filed, accepted and approved. The educational quality of the travel, its successful completion and its character as being in development and pursuit of the taxpayer's trade or business have in effect been determined and certified to by the school board acting within its statutory authority. This presents the case of the taxpayers in a favorable light.

In resolving questions of this kind, it must be borne in mind that the law which authorizes a deduction is the law of the United States and that it is to be administered by the Department of Internal Revenue subject to review by the Courts of the United States. The application of this law is not to be reduced to a formula, compliance with which is subject to the determination of the governing board of a local school district.

The governing board of a local school district is charged with the administration of the California statutes which were enacted to authorize the granting of paid leaves of absence for certain purposes. The administration of the California law, including judging a teacher's compliance, is the duty of the local school board, subject in some instances to approval by the County Superintendent of Schools. Its ruling determines whether the teacher is entitled to salary during leave, but not whether the teacher is entitled to deduct costs of travel during leave from his federal income tax. It would be improper and unwise to adopt a rule resulting in a formula which places such determination in the hands of the local school board or in any hands other than the federal authorities and courts.

█ It is necessary in every case to independently determine whether in fact the claimed deduction was incurred in carrying on a "trade or business" and both "ordinary and necessary". Otherwise, at no expense to itself or the State, a local school board would be in the position of offering an extra inducement to its teachers who are bound to benefit personally, and incidentally, most probably professionally from travel which would normally be at personal cost. It is the taxpayer's burden to show that the travel cost was an ordinary and necessary business expense and not merely that it was incurred in availing himself of the State's generous provisions for travel leave with pay. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

Section 13459 of the California Education Code authorizes the local school boards to require their teachers who go on travel leave with pay to perform services during the leave. It may be that the services which the local school board might require would be such as to qualify the costs of travel as a deductible expense. Such a ruling should await a case which squarely presents the issue.

In this case, the school board regulations required submission of a sabbatical travel plan and it accepted as compliance the filing of a travel itinerary which it approved. The itinerary covered the period of compensated travel leave and the taxpayer's summer vacation travel. No differentiation was made between the two from which it might be said that part was planned educational travel and part was not. After the traveler's return he was required to submit a report of not less than 1500 words. He did so. This was accepted and approved for purposes of qualifying the taxpayer for his compensation.

The report consisted of confirmation that the itinerary was followed. To comply with the requirement that the report show how the travel related to the field to which the teacher was currently assigned, it contained a statement that each place visited was mentioned in English literature or was a place where an author lived, died or was buried.

As a teacher of journalism he was impressed by the large number of newspapers of every shade of political opinion which were available in all the larger cities of Europe. Whether these were in the English language or he was able to read them in other languages or was told about them, does not appear from the report or the evidence. As a teacher of literature he was impressed by the large number of book stores throughout Europe and by the number of American works available in translation. He was surprised by the knowledge that many Europeans have of American authors and their works. He recalls with pleasure talking to a parking lot attendant in Amsterdam about Ernest Hemingway. He was impressed with the fact that Europeans are multilingual. He feels that the greatest benefit may come indirectly in opening an avenue of approach to some student. He took 500 colored slides, some of which are suitable for classroom use and he has a large collection of guide books and pamphlets.

The part of the trip taken during the leave period is not distinguished from the balance. Most of the report is devoted to the summer vacation portion. There is no indication from his itinerary, his

report or other evidence that his trip or any part of it is distinguishable in any particular from the usual tourist visit. Preparation of the itinerary and the report can hardly be considered services required during the leave period. One was prepared before and the other after.

A letter from the Chairman of the Sabbatical Leave Committee of the school board refers to "(y)our excellent report on your sabbatical leave," but the report hardly rises to the quality which should be expected from serious post-graduate professional experience connected with the profession of teaching, nor does it appear to the Court that more was required or even expected by the board.

The taxpayer invites the Court to compare the requirements for the other two types of sabbatical leave, which are formal study at a university and independent study. Of the two, independent study seems to be more comparable to freely planned European travel and it is interesting to note the requirement, "The report of the study must be equivalent in length, scope and quality to that found in a Master's Thesis and must be approved by the Committee on Research Studies prior to the end of the leave period." The report required and rendered in Sanders v. Comm., 19 T.C.M. 323 (1960) is more comparable to the quality of this type of report than the kind required and rendered by Adelson.

It may be well within the province of the school board to authorize paid leave for admittedly tourist travel. Travel opens the mind to broader vistas and greater understanding. It should undoubtedly be encouraged. Moreover, the schools and the pupils in the school district are bound to benefit if their teachers are exposed to widespread travel at home and abroad.

Rephrasing the issue, does it appear from the evidence in this case that the expenses incurred by the taxpayer for travel are ordinary and necessary in his business? It is not for the Commissioner of Internal Revenue or for the Courts to say how a man must earn his living. He is not to be required to follow the most profitable course in his calling to be able to deduct ordinary and necessary expenses. But it must be shown that the expenses are directly related to his business.

All of the facts of this case indicate that the course which the taxpayer followed in this instance was not required of school teachers generally, nor of him. It was in the law of California which authorized his trip, a leave of absence from his business. It was not an alternative way of following his profession. It was not primarily of a business nature, but primarily of a personal nature. The right to the leave was subject to conditions precedent, his qualifications to take it and a plan; to conditions concurrent, that he execute the plan as approved so that the purpose of providing such leave be accomplished; and to conditions subsequent, that he make a report and serve the school district for two subsequent years, but it was in essence a leave from his work and the way he spent the time substantiates this fact.

The Court concludes that the deduction should be disallowed because it is not an ordinary and necessary business expense and that the requested refund should be disallowed.

Counsel for defendant is requested to prepare an appropriate judgment and submit the same for approval as to form to counsel for plaintiffs.

This Memorandum of Decision shall substitute for Findings of Fact and Conclusions of Law. F.R.Civ.P. 52.