**Ephraim CROSS and Mary Cross, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Oct. 8, 1963.

Stanley Faulkner, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for defendant; Clarence M. Dunnaville, Asst. U. S. Atty., of counsel.

Zelman & Zelman, New York City, for Teachers' Union of City of New York, as amicus curiae, Benjamin M. Zelman, New York City, of counsel.

Miller, Montgomery & Spalding, New York City, for The Modern Language Assn. of America, as amicus curiae, William C. Porth, New York City, of counsel.

WYATT, District Judge.

Plaintiffs move for summary judgment in an action for the recovery of that part

of their income tax for the year 1954 alleged to have been erroneously or illegally assessed or collected. 28 U.S.C. § 1346(a) (1); Fed.R.Civ.P. 56.

The action and this motion involve the deductibility of expenses of a visit in Europe by a college professor of languages. Internal Revenue Code of 1954, § 162(a); Regulations, 26 C.F.R. § 1.162–5.

The cited Code provision allows as a deduction "ordinary and necessary expenses" of a "trade or business".

The cited part of the Income Tax Regulations allows the deduction of expenses for the taxpayer's "education" if such education is "undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business * * *.

\* \* \* \* \* \*

"Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph.

\* \* \* \* \* \*

"(c) In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible."

Plaintiffs are husband and wife who filed a joint return for 1954 but the deduction claimed is for expenses of the husband alone; he will be referred to sometimes as "the plaintiff".

Dr. Cross, the plaintiff, was in 1954 an Assistant Professor at City College in New York, teaching French, Spanish and romance linguistics (which means the study of the development of Latin into the romance languages and the dialects and historical stages of those languages —Portuguese, Spanish, French, Italian and Romanian). He continued at City College after 1954 and later became a full professor.

Dr. Cross was educated entirely in New York City; he has the degree of Doctor of Philosophy from Columbia University. He has been teaching foreign languages in the United States for some fifty years and has been teaching languages at City College since 1931. While not specifically stated in the record, it is assumed that Dr. Cross was born in the United States. He had been to Europe many times before 1954 but had never been to school in Europe.

It appears without contradiction that Dr. Cross and his wife sailed for Europe on June 30, 1954 on a French flag freighter; the ship called at ports in Portugal, Morocco, Algeria, and Italy; that after 21 days the voyage ended at Marseilles in France, where plaintiff and his wife then took separate paths; plaintiff stayed in France and did not rejoin his wife until after his return to New York on September 23, 1954 on a French flag passenger ship; that on his trip in 1954 plaintiff visited in each country theatres, movies, restaurants, cafes, law courts, churches, schools, etc.; that plaintiff read newspapers and talked to students, teachers and others, attended political meetings, and listened to radio broadcasts, including political speeches; that on his trip plaintiff bought many books in the various romance languages and had them sent home for his teaching library; and that plaintiff arranged for and had many discussions on his trip with book publishers about books in the various languages of the countries visited.

City College withheld $1142.40 from plaintiff's salary in 1954 in respect of income tax to the United States for that year.

When the two plaintiffs filed an income tax return for the year 1954 the amount

of $1300 was deducted as expenses for the summer trip of Dr. Cross.

Since the withholding had not given effect to such deduction, plaintiff filed claim for a refund. Int.Rev.Code 1954, §§ 6401, 6402, 7422; Regs., 26 C.F.R. § 30.6402–2.

The refund claim having been denied, this action was commenced. 28 U.S.C. § 1346, 26 U.S.C. § 7422.

The amount of refund claimed is $519.-62, said to be the difference between the tax due without the $1300 deduction (that is, the amount of tax actually withheld) and the lower tax due if the deduction is allowed.

There is no substantial controversy as to the facts set forth above.

There is also no genuine issue as to the fact that a teacher of foreign languages must, in order to maintain or improve his skill, spend some time periodically in the countries where the languages are used which he teaches here. This seems so evident as to be virtually a proper subject of judicial notice, but plaintiff submits affidavits from a number of distinguished language teachers establishing the fact. The Government submits nothing to the contrary and under General Rule 9(g) of this Court has admitted the statement of movant that such a visit as he made was considered "necessary and ordinary for him or any language teacher in order to maintain or improve his skills as a teacher of foreign languages and linguistics". In this connection, it is not without significance that the Congress has recognized that a wide speaking knowledge of modern foreign languages is essential to the national welfare and defense; in the National Defense Education Act of 1958, authority was given for the operation of foreign language centers outside the United States (20 U.S.C. § 511).

This kind of visit to foreign countries would seem to be necessary even where the teacher was born in the foreign country whose language he teaches. Where, as here, the language teacher has been born in the United States and educated here it is all the more necessary for him from time to time to hear the language spoken in its own country.

No living language remains static; the fact that it is living means that it constantly changes. In this connection, the striking expression of Mr. Justice Holmes may be remembered:

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918).

Attention has recently been sharply drawn to this phenomenon in English by the appearance of the third edition of Webster's New International Dictionary and the uproar caused thereby.

The fact that Dr. Cross had been in Europe often before 1954 did not, therefore, affect the necessity for refresher visits from time to time.

The deduction here is not really for "traveling expenses" under Section 162 (a) (2) of the Code but rather for "education" as an "ordinary and necessary" expense under the general and first words of Section 162(a). True, plaintiff did not attend an educational institution in Europe but his contacts with the people, the languages and the cultures of the countries he visited was "education" for his "trade or business", that of teaching foreign languages. There is no dispute but that he visited only those countries where the language spoken was one of those which he teaches, or (like Italian) is important in his teaching of romance linguistics.

In this respect, the teacher of foreign languages may well be in a unique situation. It is not necessary to visit Europe in order to maintain or improve many other "skills", but it is certainly necessary in the case of a teacher of European languages.

It also appears that it is "customary" for foreign language teachers to visit the countries where their languages are

used, a factor of importance under the Regulations. While the proof in the record as to this custom is not strong, it sufficiently appears from the several affidavits of other foreign language professors submitted in support of the motion. For example, the affidavit of Dr. Lange, a Professor of German at Princeton, was itself sworn to in Germany. Moreover, the brief submitted by responsible counsel for The Modern Language Association of America, as amicus curiae, states that in the last six years an average of 26% of its teacher members has made visits abroad, or over one thousand teachers each year.

The Government attempts to raise an issue as to the purpose of the visit by plaintiff, contending that it was "for a personal vacation". No facts are submitted to support the argument. The Government took the deposition of Dr. Cross, who testified that his purpose was "to maintain my linguistic contacts and to maintain and improve my skill as a user and teacher of foreign languages and foreign cultures."

At another point he testified as follows:

"My purpose was to maintain my contacts with my foreign languages for the purpose of maintaining and improving my skill as a linguist and teacher of languages, and to make my general teaching more effective, and to extend my contacts with foreign culture which I have to teach in connection with my teaching of foreign languages per se, and this can be done effectively and properly only by going into a foreign language area."

There is nothing in the record which casts any doubt on this testimony or which suggests that any part of the 1954 trip and visit was personal vacation rather than education.

The Government relies on Adelson v. United States, 221 F.Supp. 31, a recent decision in the Southern District of California. It is not really in point, however, because the taxpayer in that case taught English language and literature. It could not seriously be argued by him that travel in Europe was necessary to maintain or improve his skill in teaching English; his claim in fact does not appear to have been based on the "maintaining or improving skills" language of Section 1.162–5(a) (1) of the Regulations, although this section was mentioned in the opinion.

The case at bar is more like those which have actually allowed deductions for education undertaken for the purpose of "maintaining or improving skills" under Regulations § 1.162–5(a) (1). Carlucci v. Commissioner, 37 T.C. 695 (1962); Frazee v. Commissioner, 22 T.C.M. 1963–217; Pattore v. Commissioner, 22 T.C.M. 1963–219. Especially interesting is Neschis v. Commissioner, 22 T.C.M. 1963–191. Here an elementary school teacher, teaching all subjects in the fourth and fifth grades, deducted $1813 as the cost of a trip to Europe. The Tax Court allowed 50% of these expenses, or $906.50, as a deduction, saying:

"* * * we think that the facts in this case also show that a part of the tour which petitioner took was more than mere sightseeing. It was taken by petitioner for the purpose of maintaining or improving his skills required in his employment of teaching in the elementary grades of the public schools of Yonkers, New York."

See also Hill v. Commissioner, 181 F.2d 906 (4th Cir., 1950); Coughlin v. Commissioner, 203 F.2d 307 (2d Cir., 1953); Devereaux v. Commissioner, 292 F.2d 637 (3d Cir., 1961).

■ The expenses of plaintiff for his 1954 stay in Europe are, therefore, properly deductible.

■ The Government contends that the amount of expenses of Dr. Cross is not established and suggests that part of the claimed deduction was for Mrs. Cross.

No facts are submitted for the Government to support these contentions.

In his sworn answers to interrogatories, plaintiff has stated that his steamship fare was $603 and other expenses while gone were $697, aggregating the $1300 claimed.

The Government had every opportunity to cross-examine plaintiff at his deposition.

No reason is shown why the figures as sworn to by plaintiff should not be accepted.

Finding that there is no genuine issue as to any material fact and that plaintiff is entitled to a judgment as a matter of law, the motion for summary judgment is granted and the Clerk is directed to enter judgment hereon in favor of the plaintiff and against defendant in the sum of $519.62 as prayed for in the amended complaint.