**Ephraim CROSS and Mary Cross,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

United States District Court
S. D. New York.

Jan. 28, 1966.

Stanley Faulkner, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, for defendant, Irwin B. Robins, Grant B. Hering, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

This is an action brought to recover $519.62 in taxes alleged to have been illegally and erroneously collected. The

plaintiff, Ephraim Cross,[1] complains of the disallowance by the Commissioner of Internal Revenue of a deduction of $1,300 on his income tax return for 1954. The amount deducted is claimed to have been expended by plaintiff on a trip to Europe during the summer of 1954. Summary judgment for plaintiff was granted, 222 F.Supp. 157 (S.D.N.Y. 1963). The Court of Appeals reversed, 336 F.2d 431 (2nd Cir. 1964). The case came on for trial before this court, sitting without a jury. Now, upon hearing all the testimony, studying the exhibits, the briefs, and the proposed findings of fact and conclusions of law submitted by counsel, I make the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff in 1954 was a teacher at the City College of New York, holding a rank of less than full professor. (139)[2] Plaintiff had been regularly employed as a teacher at City College since 1932. (6)

2. During the twelve-year period commencing with the Fall Semester of 1945 and ending with the Spring Semester of 1957, inclusive, plaintiff taught courses as follows:

> Spanish courses—60
> French courses —13.

(100–113; Exhibits C, C–1–3, 5–15, 17–30) While nearly all these courses were on an elementary or intermediate level, plaintiff did teach one course in 1957 on the development of Spanish from Latin. (Ex. B)

3. In his French courses plaintiff, prior to 1954, was already distinguishing between Parisian pronunciation and that of the south of France or other outlying areas such as North Africa. Plaintiff taught his students Parisian pronounciation. (120, 186)

4. On June 30, 1954, plaintiff left New York on a French freighter accompanied by his wife and his dog, Trixie. (7, 83, 84) The ship called at Lisbon, Casablanca, Tangier, Oran, Algiers, Naples and Genoa, arriving at Marseilles on July 21, 1954. (7, 8)

5. Plaintiff spent no more than fractions of three days at any of the ports before arrival at Marseilles, and usually spent only a fraction of a day or two at each port. (7, 8) At each intermediate port plaintiff went shopping and sightseeing. He bought books and souvenirs. Several times he struck up conversations or asked directions. Several times he took bus or taxi rides during which he conversed with the driver. Several times he conversed with book sellers. (7, 8, 11–14, 141–150) Apparently the conversations in Lisbon were in Portuguese. (11) The conversations in Casablanca and Tangier were in Spanish and French. (12) The conversations in Oran and Algiers were in French. (13) There is no testimony as to the language in which conversations in Italy were conducted.

6. In Casablanca, the language spoken by most people is Arabic. Professor Cross was unsure whether Arabic or French is spoken by most people in Tangier, Oran and Algiers, though the language of the countries in which these ports lie is Arabic. (85–88)

7. Other notable events before arrival at Marseilles included the visiting of a school in Morocco at which Spanish and French were spoken (89, 90), the attendance of movies in Italy (88), and the attendance of a speech delivered in French at a Bastille Day celebration in Algiers. (13, 148–49)

8. Plaintiff, his wife, and Trixie arrived in Marseilles on July 21, 1954, as stated. There they remained until July 27, 1954, lodged at the Grand Hotel Mediteranee, along with a lady friend of

---

1. Mary Cross is a party plaintiff solely by virtue of the fact that she filed a joint return with her husband, Ephraim Cross.

Hereinafter, Ephraim Cross is referred to as the plaintiff.

2. Unless otherwise noted, numbers in parenthesis throughout the opinion refers to pages of the trial transcript.

the wife, whose bill Professor Cross paid. (8, 19, 123) While at Marseilles plaintiff did some traveling in the area. He also visited shops, both book shops and novelty shops. At the novelty shops he bought some small things. At the book shops, plaintiff bought some books and engaged in conversation about the books. Plaintiff also engaged in a conversation with some workers in the port regarding French and American social conditions. (14–15, 150–52)

9. Plaintiff, his wife, Trixie, and the lady friend then went to Le Lavandou, a small beach resort on the Mediterranean, where they stayed for twenty-four days. (15, 33, 120–21; Ex. 6) Plaintiff was disappointed in the beach. (120–21) Nevertheless, he spent about an hour a day on ten separate days there. (121) While at Le Lavandou plaintiff also went sightseeing, drove through the town and to a neighboring town. He went to book shops and other shops, made purchases, went to meetings, entertainments, became acquainted with some officials of the town and the military, and was presented with a book. Plaintiff and his wife also met a French couple near the beach with whom they talked. (16, 152–53) While at Le Lavandou, plaintiff visited the nearby Ile du Levant, where a nudist colony is located. (122)

10. Plaintiff went to Aix-en-Provence for a few hours, which he spent sightseeing and talking. (15)

11. Plaintiff, his wife and Trixie returned to Marseilles on August 20, 1954 (21; Ex. 3), where they stayed at the Grand Hotel Mediteranee with the lady friend of plaintiff's wife. (21, 123, 166–67; Ex. 3) No testimony was presented as to what plaintiff did in Marseilles on this visit.

12. On August 23, plaintiff alone set out for Paris, where he stayed for twenty-four days (until September 16, 1954) at the Hotel D'Albe. (16–17, 38) In Paris, plaintiff visited museums, movies, one or two court sessions, and saw Faust and Thais at the Opera. He visited the Bibliotheque Nationale and the library of the Sorbonne, where he struck up conversations with the librarians regarding cultural matters, libraries, books, and library procedures. He also visited book publishers, where he discussed books and made purchases. One of the books purchased by plaintiff was a "medical guide and sex book." He "did shopping, more shopping." (17–18, 136–37, 153–55, 158)

13. Plaintiff left Paris for Le Havre on Setember 16, 1954 and left Le Havre for New York on September 17, 1954 aboard the French liner, Flandre. (9, 39)

14. Throughout his time in France, plaintiff spoke French when conversing, except with a few people such as his wife. (18, 83, 152) Apparently plaintiff made no records of any acquisitions of new French vocabulary or improvements in pronounciation.

15. Plaintiff had not been to Europe since 1938. (49)

16. In the summer of 1954 the value of the French franc was 350 to $1.00. (24)

17. During his trip plaintiff incurred expenses for himself as follows:

| | |
|---|---|
| Fare to Marseilles (41–42) | $ 255.00 |
| Room in Marseilles (196) | 20.57 |
| Food in Marseilles (32) | 45.00 |
| Food and lodging in Le Lavandou (196) | 192.00 |
| Transportation to Paris and Le Havre (38, 39) | 24.00 |
| Room in Paris (39) | 48.00 |
| Food in Paris (39) | 120.00 |
| Food and lodging in Le Havre (40) | 7.00 |
| Insurance on Baggage (49) | 9.00 |
| Fare to New York (43–46) | 353.00 |
| | $1,073.57 |

18. The trip during the summer of 1954 by Professor Cross was not undertaken primarily for the purpose of maintaining or improving his skill as a teacher of French, Spanish or romance linguistics.

19. The trip of Professor Cross was primarily a vacation, personal in nature.

## DISCUSSION

Plaintiff here claims that he is entitled to deduct on his 1954 income tax return expenses incurred during a trip to Europe. Plaintiff argues that as a teacher of French, Spanish and romance linguistics he is entitled to deduct the cost of the trip described in the foregoing Findings of Fact as an ordinary and necessary business expense. I conclude otherwise.

■■ It is well settled that a taxpayer seeking a deduction must be able to point to a statute which entitles him to that deduction and then show that he comes within its terms. The burden of proof in establishing that he is entitled to a deduction and the amount thereof is upon the taxpayer. Bishop v. Commissioner of Internal Revenue, 342 F.2d 757 (6th Cir. 1965); Markham v. United States, 245 F.Supp. 505 (S.D.N.Y.1965).

Section 162, Internal Revenue Code of 1954, at all times relevant here, in part provided:

"(a) * ˌ* * There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

* * * * * *

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

Treasury Reg. 1.162–2(b) (2) in part provides:

"Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances in each case. * * *"

Treasury Reg. 1.162–5 in part provides:

"(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

"(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. "Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. * * *

* * * * * *

"(c) In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible.

"(d) * * * If the taxpayer's travel away from home is primarily personal, the taxpayer's expenditures for travel, meals, and lodging (other than meals and lodging during the time spent in participating in deductible educational pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends on all the facts and circumstances of each case. An important factor to be taken into consideration in making the determination is the relative amount of time devoted to personal activity as compared with the time devoted to educational pursuits. * * *"

Thus the Regulations in § 1.162–5(c) quoted above recognize the argument made by some taxpayers that travel may

be educational, and, as a general rule, deductibility is nevertheless denied. However, Rev.Rul. 64–176, 1964–1 Cum. Bull. (Part I) 87 liberalizes the position of the Regulations in certain situations. That ruling analogizes certain types of travel by teachers to expenses incurred for education. To such travel the ruling would apply the criteria contained in Treasury Reg. 1.162–5(a) quoted above in order to determine deductibility. While such a liberalized position is not in terms applicable here, since the ruling cited above applies to sabbatical leave for travel, the position taken in a very similar situation seems reasonable, and I adopt it here. Cf. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

■■ It appears, then, that since no express requirement of taxpayer's employer is claimed for this trip, in order for plaintiff to prevail he is required to show that his travels were undertaken *primarily* for the purpose of maintaining or improving his skill as a teacher of Spanish, French, and, to a certain extent, of romance linguistics. I find that Professor Cross has not sustained his burden of proving this fact by a fair preponderance of the credible evidence. Even on the basis of plaintiff's own testimony as to his travels, I am convinced that he has not demonstrated that his trip was undertaken primarily for the alleged purposes. The plaintiff's knowledge of French may have facilitated his travels, but it is not evident that the travels were motivated by a primary purpose of improving his French.

Moreover, plaintiff's credibility was seriously damaged in my eyes by his admission on cross-examination that certain hotel bills, specifically stated on direct examination to have been for himself and his wife only, in fact included charges for a third person in a separate room. (123) Furthermore, his case is not aided by the selection of a beach resort as the place at which to spend nearly one-half of his time in France, even though some part of his time may have been spent in vocabulary acquisitions.

In short, I am not convinced by Professor Cross' protestations about the primary purpose of his summer travel. After noting plaintiff's demeanor and hearing his testimony, I am unable to find that the primary purpose of the trip or of any part thereof was to maintain or improve his skill in teaching French, Spanish, or romance linguistics. In statutory terms, then, these expenses were not "incurred * * * in carrying on any trade or business * * *."

■ Proof regarding the customary nature of trips similar to this one, involving this type of vacation itinerary, behavior, and attitude, by similarly situated teachers for the primary purpose of maintaining or improving their language skills, was totally inadequate to convince me on that point. Cf. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). The mere fact that teachers of language sometimes or customarily (though the latter was not shown) may take some trips to countries in which the language they teach is spoken, for primary purposes which would allow deductibility, does not make deductible *any* type of trip to such a country, no matter what its nature or its purpose.

To sum up, plaintiff has failed to sustain his burden of proving by a preponderance of the credible evidence that the expenses involved herein were ordinary and necessary expenses incurred in carrying on a trade or business.

CONCLUSIONS OF LAW

1. Jurisdiction is conferred upon the court by 28 U.S.C. § 1346(a) (1).

2. Expenses incurred by plaintiff on his trip to Europe in 1954 were not ordinary and necessary expenses incurred in carrying on a trade or business, within the meaning of Section 162, Internal Revenue Code of 1954.

3. Defendant is entitled to judgment dismissing plaintiff's complaint and to costs.

Settle judgment on notice.