Leo J. Roy and Concetta C. Roy v. Commissioner.
Roy v. Commissioner
Docket No. 1011-67.
United States Tax Court
T.C. Memo 1969-115; 1969 Tax Ct. Memo LEXIS 180; 28 T.C.M. (CCH) 607; T.C.M. (RIA) 69115; June 12, 1969, Filed *180 A high school teacher, and his wife, who was the administrative assistant to the high school principal and head of the guidance department, were granted sabbatical leaves at half pay for travel for educational and cultural purposes. They traveled around the world and sought deduction on their joint return for their travel expenses. Held, the travel expenses were not deductible as a form of educational expenses. Petitioners failed to sustain their burden of establishing that the trip was undertaken primarily to maintain or improve the skills required in their employment within the provisions of sec. 1.162-5, Income Tax Regs.
Zachary S. Zimmerman, for the petitioners. Stanley J. Goldberg, for the respondent. MULRONEY *181 Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' 1964 income tax in the amount of $2,054.24. The petitioners are a high school teacher and his wife, who was the administrative assistant to the high school principal and head of the guidance department. The only issue is whether the cost of petitioners' around the world trip 608 during a sabbatical leave for travel granted by the school board constitutes a deductible business expense. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Leo J. and Concetta C. Roy are husband and wife and their residence at the time of the filing of the petition was New York, N. Y. They filed a joint Federal income tax return, Form 1040, for the taxable year 1964 with the district director of internal revenue, Brooklyn District, New York. Leo was employed during the taxable year 1964 by the Board of Education of the City of New York as a teacher of French at the Bayside High School, Queens, New York. Leo holds a basic license in the French language and also has ancillary licenses in the Spanish language, mathematics, chemistry and general *182 science. Concetta was employed during the taxable year 1964 by the Board of Education as an administrative assistant at the Flushing High School, Flushing, New York. Concetta holds a basic license in stenography and typing. Both Leo and Concetta held permanent appointments. On November 18, 1963, the office of the Superintendent of Schools of the Board of Education issued General Circular No. 10, 1963-1964, containing instructions pertaining to "Sabbatical Leaves of Absence" for the period beginning February 1, 1964, and ending July 31, 1964. This circular stated, in part, as follows: SABBATICAL LEAVES OF ABSENCE Applications for Sabbatical Leaves of Absence for the purpose of STUDY, TRAVEL, RESTORATION OF HEALTH or REST for the period beginning February 1, 1964, and ending July 31, 1964, must be in the Bureau of Appointment no later than December 2, 1963. * * * A. Types of Leaves * * * 2. Sabbatical Leave for TRAVEL Applications for sabbatical leave for the purpose of TRAVEL must be accompanied by a proposed itinerary indicating: a. that the applicant will travel for at least three months during the period of the leave. b. the specific places (named) to be visited *183 in the United States or abroad. The approximate length of time to be spent in each place should be included. c. the educational and cultural purposes of the trip. On April 1, 1964, the Board of Education, through the Superintendent of Schools, issued Special Circular No. 59, setting forth regulations pertaining to sabbatical leaves of absence. This circular stated, in part, as follows: SABBATICAL LEAVE REGULATIONS ADOPTED BY THE BOARD OF EDUCATION ON MARCH 24, 1960 AMENDED BY THE BOARD OF EDUCATION ON MARCH 27, 1963 * * * 3. COMPENSATION An applicant who has been granted a sabbatical leave shall receive compensation at a rate determined by the Board of Education. The Superintendent of Schools shall submit his recommendation on or before May 15th. 4. TYPES OF SABBATICAL LEAVES * * * (b) TRAVEL - The applicant is required to travel for specific educational and cultural purposes in the United States or another country (or countries) for at least three months of the period of sabbatical leave. A proposed itinerary shall be submitted with the application and a detailed report shall be submitted to the Associate Superintendent in charge of the appropriate Operating Division *184 upon the completion of sabbatical leave. The petitioners submitted to the Board of Education applications for sabbatical leaves for the purpose of travel for the period February 1, 1964 to July 31, 1964. These applications set forth their proposed itinerary and each stated the educational benefits to be derived, as follows: Leo J. Roy - "In my many years of teaching, I have found my experiences outside the classroom have made me a better and more influential teacher. I hope this trip around the world will add to this store of experiences. I intend to visit the school systems in these countries and to profit by any opportunities I may have to use and perfect the five languages I have studied, taught, and used over the years." 609 Concetta C. Roy - "I believe the trip will be of educational and cultural value to me. I intend to visit a number of schools and universities to observe their administrative and guidance practices, the good features of which I hope to offer for implementation. In my position of administrative assistant, I must often counsel students and parents from the countries I expect to visit. This trip should enable me to understand better their educational *185 and personal problems." Both Leo and Concetta submitted to the Board of Education applications for a sabbatical leave of absence for the purpose of travel for the period beginning February 1, 1964 and ending July 31, 1964. Said applications set forth information with respect to their proposed itinerary and the alleged educational benefits to be derived from said sabbatical leave of absence. The Board of Education granted sabbatical leave to Leo and Concetta for "Travel for Educational and Cultural Purposes." Leo and Concetta began their sabbatical leave by departing from New York City by airplane on February 5, 1964 for Cairo, United Arab Republic (Egypt) and they traveled extensively from February 5, 1964 through June 18, 1964. During this period, Leo and Concetta toured the following countries and states: United Arab Republic (Egypt), Lebanon, Iran, Pakistan, India, Ceylon, Kashmir, Nepal, Thailand, Singapore, Philippine Republic, Hong Kong, China (Taiwan), Japan, Hawaii, California, Texas and Oklahoma. It is stipulated that Leo and Concetta incurred expenses totalling $4,182.52 on their tour for meals, lodging, tours, miscellaneous expenses and airport taxes and, in addition *186 thereto, they incurred additional expenses totalling $4,794.10 comprised of the following: Airplane fares
$4,165.40
Visas
28.70
Film and film processing 600.00
Total
$4,794.10
During the period of their sabbatical leaves, Leo and Concetta received monthly compensation from the Board of Education at the rate of 50 percent of their respective annual salaries. Upon the termination of their sabbatical leaves, Leo and Concetta submitted reports to the superintendent in charge of the High School Division of the Board of Education. These reports are long and detailed. Leo's consists of approximately 15 pages and Concetta's is about 30 pages. There are headings naming each country visited followed by the record of what petitioners observed and did on their journey through each country. The reports contain other general impressions with respect to the people and countries visited. Petitioners brought back slides and some 5,000 feet of film of this trip which they have shown to teachers and supervisors and guidance department personnel. In all, there were about 30 or 40 such showings of slides and movies and along with the sessions, petitioners usually gave a *187 summary of the custom and attitudes of the people. It is stipulated that petitioners' total expenditures on their tour from February 5, 1964 through June 18, 1964 was $8,976.62. They deducted on their joint 1964 Federal income tax return for employee business expense the sum of $8,800. Respondent disallowed the deduction, his notice of deficiency stating: (a) The amount of $8,800.00, representing a deduction claimed for traveling expenses incurred while on a sabbatical leave, is disallowed for the reason that such expenditures do not constitute allowable deductions under the provisions of Section 162(a) of the Internal Revenue Code of 1954. Opinion Section 162, I.R.C. of 1954, allows a deduction for "the ordinary and necessary expenses paid * * * during the taxable year in carrying on any trade or business, including - * * * traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business; * * *." Respondent has promulgated regulations under the above statute which permit deductions under certain circumstances for a taxpayer's expenditures for his education. *188 Petitioners elected to base their claim for deduction on respondent's regulation governing the deductibility of a taxpayer's educational expenditures that was in force in 1964. [1] It provided, in pertinent part, as follows: 610 § 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) * * * Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * * Respondent has in effect interpreted the word "education" in the above regulation as not restricted to the conventional meaning of instruction in a school, college, or university. Respondent recognizes that "travel" may, under certain circumstances, be a *189 form of education, the cost of which may be deductible under the above statute and regulation. Rev. Rul. 64-176, 1964-1 (Part 1) C.B. 87. In fact, section 1.162-5, Income Tax Regs., mentions travel as a form of education that might be considered in that it provides, in subsection (c), as follows: § 1.162-5(c) - In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible. As observed in Cross v. United States, 250 F. Supp. 609, 613 (S.D. N. Y., 1966), the above subsection of the regulation "recognizes the argument made by some taxpayers that travel may be educational, and, as a general rule, deductibility is nevertheless denied." It is admitted petitioners spent $8,800 travel expenses for their around the world tour. It is admitted the travel was not required by the Board of Education. A sabbatical leave was something a teacher could request after a certain number of years of teaching if he cared to do so. If granted he could receive some portion of his pay during the leave and there was *190 no diminution of his retirement rights. The two petitioners had the burden to show that the education was primarily undertaken by them to improve their skills required in their positions as a high school teacher of French and Spanish and as head of the high school guidance department. It can be admitted that travel can be both cultural and educational but travel undertaken with the dual purpose of improving the general cultural or educational qualifications of a teacher would not be sufficient under the regulation. This would be true even though it could be said the schools and pupils in the schools would receive some benefit if the schoolteachers engaged in travel to foreign countries. We are dealing here with a business expense deduction to be taken by two taxpayers in the business of being a schoolteacher and a guidance department head. The very purpose of the requirement that the non-required education must be primarily undertaken to maintain or improve job skills is to differentiate the job-related education which can be considered a business expense from education that is undertaken for general cultural or educational improvement, the cost of which is considered personal. *191 The word "primarily" in the regulation should be given its ordinary meaning. It is not to be construed as substantially or one of two equally important considerations. It means of first importance or principally. Malat v. Riddell, 383 U.S. 569 (1966). The fact that the school board's regulations authorize sabbatical leaves for travel for cultural and educational purposes and the fact that petitioners' planned travel was approved by the school board in this case do not mean the requisite primary purpose to maintain or sharpen skills required in their work was established. Cross v. United States, 336 F. 2d 431 (C.A.2, 1964), and Adelson v. United States, 342 F. 2d 332 (C.A.9, 1965), affirming 221 F. Supp. 31 (1963). In the last cited case the taxpayer taught English and he qualified under the State's Educational Code for a sabbatical leave. He requested a leave for "educational travel", one of the three types of sabbatical leaves, and his request was approved. He argued the educational quality of his travel (a European trip) and its character as being in pursuit of his business as a teacher had been determined by the board and this *192 determination should have been accepted by the trial court. The opinion holds the trial court was right in not accepting the school board's determination as a sufficient basis for deductibility. The trial court had stated, page 37: "It is the taxpayer's burden to show that the travel cost was an ordinary and necessary business expense and not merely that it was incurred in availing himself of the State's 611 generous provisions for travel leave with pay." As stated in the quoted regulation, it is necessary to determine the deductibility of the claimed educational expenditure on the facts of each case. Petitioners' testimony does not show that their around the world trip was undertaken by them primarily for the purpose of maintaining or improving their job skills. They both testified they wanted to take a subbatical leave. They knew this could be granted for health, rest, or travel. Roy testified that no sabbatical leaves were being granted for rest at that time but they investigated the possibilities for taking a sabbatical leave for restoration of health. When they found they could not get the required doctor's statement for a sabbatical leave for the restoration of health they *193 decided to take a travel sabbatical. Roy testified that he has been a schoolteacher since 1922. In earlier years he was an elementary schoolteacher, and then a high school teacher of science and mathematics and since 1937 a high school teacher of French and sometimes Spanish. He is of French background and he testified that he had traveled extensively over the past 31 years. He said he had traveled to France three times, to Belgium once, to Switzerland twice, to Spain once, to French speaking Canada (where it appears he had relatives) four times, and that he made two trips to Florida and three to California as he said "for Spanish." He stated that many of his past trips had lasted over two months and he considered this last trip around the world as the "culmination of all the trips that I took." He was not specifically asked whether he undertook the trip around the world primarily to maintain or improve his French and Spanish teaching skills. However, he was asked if, in his opinion, the around the world trip aided him in his work that he was engaged in in 1964. He replied: "In my own opinion, yes * * *." There is nothing in Concetta's testimony that she undertook the around the *194 world trip primarily to obtain or improve the skills required of her in the work she was doing in 1964. She stated that her work in the school was that of "Administrative assistant [to the principal] in charge of guidance"; that she had charge of "the guidance area"; and that under her were "the guidance counselors." When asked if the trip was required by any school board regulations, she replied: It wasn't required, no. This was a personal - we felt a personal need for taking a sabbatical, and we wanted to do something worthwhile with it, and we felt - and the board requires that either you take it for health or you take it for travel or you take it for rest. She went on to say that she did not know if there were any rest sabbaticals at that time but "we decided that we wanted it for travel." We are convinced that on the basis of their own testimony there could be no determination that petitioners' around the world trip was undertaken by them primarily for maintaining or improving the skills required of them in their employment. On brief petitioners argue that their "comprehensive reports, submitted at the conclusion of their travels * * * bolsters their contention that *195 the primary purpose of their travels was to maintain or improve the skills required of them in their employment." Roy's report starts out by stating the "PURPOSE" of the trip. It states: The trip was taken to fulfill one of the conditions imposed by the Board of Education for sabbatical leaves of absence (my first in 42 years of teaching), i.e. to travel for cultural reasons. I was unable to obtain the trip for restoration of health, * * *. There certainly is no indication in what was stated as the purpose of the trip that he was primarily undertaking the trip to maintain or improve his skills as a teacher of French and Spanish. Concetta's report states on the first page that "my sabbatical [was] taken for educational and cultural reasons * * *." These reports both show that the around the world trip taken by the petitioners followed the itinerary plan that had been previously submitted. The reports, especially Concetta's are very detailed. In the main they show that petitioners visited places of sightseer interest that any tourist would visit on an around the world trip. They saw the pyramids and the Great Sphinx and the Taj Mahal and the reports record their visits to *196 tombs, temples, schools, market places, bazaars, mosques, palaces, observatories, gardens, caves, government buildings, rubber plantations, tea plantations, cathedrals, beaches, parks, and many, many more places that would seem to be attractive to any tourist on an around the world tour. Much of their reports is devoted to telling all about other tourists they 612 met on the trip. They also give long descriptions of each country and city and each place they visited and of the people and their customs and often their opinions with respect to the people and their customs. In Concetta's report some dozen pages are devoted to a detailed report of the return portion of their trip in the United States. They traveled to Hawaii, California, Texas and Oklahoma. We mention but a few of the places her report states they visited in Hawaii and California - Diamond Head, Pearl Harbor, Iolani Palace, pineapple plantations, Oakland Art Museum, Golden Gate and Bay Bridges, Nob and Telegraph Hills, the Seal Rocks, La Brea Tar Pits, Hollywood's famous sites such as Grauman's Chinese Theatre, Cocoanut Grove, Brown Derby and the homes of Hollywood film stars. They took city tours in Dallas and Oklahoma *197 City and Concetta's report tells what they saw on these two city sightseeing tours. The reports show petitioners made some visits to schools in foreign countries. But this appears to be no more than a teacher's understandable interest in schools or in fact anything that relates to the teaching profession. Any traveler around the world might be expected to take special interest in seeing that which relates to his profession. This visiting of schools does not make the expenses a deductible business expense. [2]
We can agree that this around the world trip would have general cultural *198 value and even some educational value to petitioners. But this is not sufficient. The evidence, including the reports, fails to establish that petitioners' primary purpose in undertaking the trip was to maintain or improve the skills required in their employment. The facts in this case are very similar to Adelson v. United States, previously cited. There the English teacher submitted his travel itinerary for his sabbatical leave for what was called "educational travel." His itinerary was accepted and he traveled through the countries of Europe. On his return he filed the required report of his trip. This report contained "a statement that each place visited was mentioned in English literature or was a place where an author lived, died or was buried." His travel expense was held not deductible under section 162 of the I.R.C. of 1954, and sec. 1.162-5, Income Tax Regs.
In Cross v. United States, supra, the court held that the traveling expenses for a European trip undertaken by a college teacher of French, Spanish, and romance languages, were not deductible under section 162, I.R.C. of 1954, and sec. 1.162-5, Income Tax Regs.
*199 Claims for educational expenditure deductions similar to that of the petitioners in this case where the claimed education was in the form of travel, were rejected in Fugate v. United States, 259 F. Supp. 398 (W.D. Tex., 1966), and Dennchy v. Commissioner, 309 F. 2d 149 (C.A. 6, 1962), affirming Memorandum Opinion of this Court. We hold respondent was right in his determination that the travel expense of petitioners in the sum of $8,800 while on sabbatical leave was not deductible as a business expense under section 162(a), I.R.C. of 1954. The remaining minor adjustment in respondent's determination of deficiency was conceded by petitioners, so Decision will be entered for the respondent. Footnotes
1. Although the 1967 regulation was given retroactive effect, petitioners could elect to base their claim for deduction on the regulation in force in 1964. See Rev. Rul. 68-191, 1968-1 C.B. 67↩.
2. The following comment in Cross v. United States, 336 F. 2d 431 (1964) is somewhat in point: Who can doubt that the alert American trial lawyer as a part of a summer vacation might not profit greatly by spending some time at the Old Bailey listening to British barristers exhibit their skills. The surgeon, too, might be benefited in his profession by observing some delicate operation conducted by a European surgeon of renown. Yet it is questionable whether such tangible evidences of constant interest in one's profession entitle a taxpayer to deduct all his summer vacation expenses.↩